ROBERT E. CUSHMAN *v.* LEE CUSHMAN
(AC 25541)

Lavery, C. J., and Schaller and Berdon, Js.

---

Argued September 22, 2005—officially released January 17, 2006

*Richard E. Castiglioni*, with whom, on the brief, was *Laura R. Shattuck*, for the appellant (plaintiff).

*Mark R. Soboslai*, with whom, on the brief, were *Nancy Segore-Freshman* and *Tara Von Kohorn*, for the appellee (defendant).

*Opinion*

BERDON, J. The plaintiff, Robert E. Cushman, appeals from the postjudgment alimony orders of the trial court that stem from the parties' 1999 judgment of dissolution. The plaintiff claims that the court improperly (1) inquired whether there was a substantial change of circumstances instead of conducting a de novo review of the parties' financial circumstances pursuant to General Statutes § 46b-82, as required by the separation agreement that was incorporated into the judgment of dissolution, (2) awarded excessive alimony to the defendant, Lee Cushman, and (3) failed to find that the defendant's living situation met the definition of cohabitation under General Statutes § 46b-86 (b). We disagree and affirm the judgment of the trial court.

The relevant facts and procedural history of the plaintiff's appeal are as follows. On October 13, 1999, the parties entered into a separation agreement as part of the dissolution of their thirty-seven year marriage. The separation agreement required the plaintiff to pay the defendant $12,500 in monthly alimony for a period of four years. At the conclusion of the four year period, the parties, pursuant to the separation agreement, were to "take a 'second look' to redetermine" on a de novo basis "the amount of periodic alimony . . . ."[1] That

[1] Section 2 A of the separation agreement provides in relevant part: "At the end of the four (4) year period, the parties shall take a 'second look' to redetermine the amount of periodic alimony, which shall be based on the parties' financial circumstances at that time. The 'second look' shall not be a modification determination based on a change in the parties' financial circumstances, but rather a [d]e [n]ovo determination according to the parties' respective financial circumstances at that time."

"second look" was to take place prior to September 1, 2003, by which date the parties were to have made a good faith effort to resolve the redetermination of alimony.[2] Following September 1, 2003, the alimony set forth under the four year term was to continue until an agreement between the parties or a court order established a new arrangement. Any new arrangement was then to be retroactive to September 1, 2003. An additional provision of the separation agreement required the plaintiff to maintain a $500,000 life insurance policy with the defendant as beneficiary in order to insure the alimony payments. At the time of the "second look" to review the alimony obligations, the parties were also to redetermine the amount of the life insurance "based on the circumstances at that time."

Not having agreed to the redetermined amount of alimony or life insurance, the plaintiff, on August 13, 2003, filed a motion for modification of alimony in which he requested that the October 13, 1999 judgment of dissolution be modified to terminate or reduce his alimony obligation. He claimed that the defendant's significant, independent means of support and her cohabitation with another person warranted the modification of alimony. Beginning September 1, 2003, the plaintiff ceased to make his alimony payments to the defendant and failed to maintain the life insurance policy. On September 9, 2003, the defendant filed a motion for contempt on the ground that the plaintiff had failed to pay alimony and failed to maintain the life insurance in accordance with the 1999 judgment of

---

[2] Section 2 B of the separation agreement provides in relevant part: "The alimony set forth herein for the four (4) year term shall continue until such time as there is an agreement or court order with respect to the parties' 'second look' or alternate arrangement, at which time the subsequent order or agreement shall be retroactive to September 1, 2003, with the [plaintiff] to receive a credit for any amounts paid pursuant to this paragraph. The parties shall make a good faith effort to resolve the 'second look' issue before September 1, 2003."

dissolution. On May 4, 2004, the court, subsequent to a four day hearing, granted the plaintiff's motion for modification and reduced his monthly alimony obligation to $9000 from $12,500, retroactive to September 1, 2003. The court did not find that the defendant's living situation caused a change of circumstances so as to alter the defendant's financial needs under § 46b-86 (b). Further, the court found the plaintiff in wilful contempt for failure to pay alimony and to maintain life insurance pursuant to the dissolution judgment. Accordingly, the plaintiff was ordered to pay the nine month arrearage and $1500 in attorney's fees, in addition to maintaining a $500,000 life insurance policy with the defendant as beneficiary. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly limited its review to whether there was a substantial change of circumstances instead of conducting a de novo review of the parties' financial and other circumstances as of September 1, 2003, pursuant to § 46b-82,[3] as required by the separation agreement. We disagree and conclude that the court conducted a de novo review based on the parties' financial circumstances as of September 1, 2003, pursuant to the criteria enumerated under § 46b-82 for the award of alimony.

We first identify our standard of review. The standard of review governing this matter is well settled. "In a marriage dissolution action, an agreement of the parties executed at the time of the dissolution and incorporated

---

[3] General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party [and] shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ."

into the judgment is a contract of the parties. . . . The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. . . . The scope of review in such cases is plenary." (Citation omitted; internal quotation marks omitted.) *Sullivan* v. *Sullivan*, 66 Conn. App. 501, 504, 784 A.2d 1047 (2001).

When a modification of alimony is requested on the basis of the separation agreement, the court must look to the agreement. "Separation agreements incorporated by reference into dissolution judgments are to be interpreted consistently with accepted principles governing contracts." *Kremenitzer* v. *Kremenitzer*, 81 Conn. App. 135, 139, 838 A.2d 1026 (2004).

In the present case, the separation agreement required the parties to take a "second look" at the alimony at the completion of the initial four year term. The "second look" was to be a consideration of the parties' financial circumstances de novo, as if it were an initial determination of alimony, requiring the application of § 46b-82 criteria. Section 46b-82 "set[s] forth the criteria that a trial court must consider when resolving property and alimony disputes in a dissolution of marriage action. The court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor. A ritualistic rendition of each and every statutory element would serve no useful purpose. . . . [T]he trial court is free to weigh the relevant statutory criteria without having to detail what importance it has assigned to the various statutory factors." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 670, 862 A.2d 374, cert. denied, 273 Conn. 904, 868 A.2d 744 (2005).

It is clear that the court properly looked to the separation agreement and conducted a de novo review. At the start of its oral decision, the court established that the issue was "a de novo look at the issue of alimony . . . ." The court stated that it "consider[ed] the criteria which was set forth in the statutes at § 46b-82 and . . . § 46b-86 (b),[4] which are the criteria to be considered in the determination of alimony . . . ." The court further affirmed its consideration of the proper criteria when it stated that it had heard evidence concerning "the length of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, state and needs of the parties," which are set forth in § 46b-82 as factors to be considered in alimony determinations.

The plaintiff further argues that the court failed to base its decision on the financial circumstances of the parties at the end of the four year period and claims that the court "ignore[d] the provision of . . . § 46b-82 that the court shall consider the estate of each of the parties." We disagree. The court did not ignore that provision of § 46b-82, but clearly stated that "[a]lthough it is a de novo look at the issue of alimony, there are certain things that the court cannot do in this case that would normally occur at the time of the final dissolution of marriage [because of the limitation in the separation agreement]. And one of those is the reallocation of assets. It is quite clear that that takes place at the time of dissolution and is really not to be taken into consideration in any way that will reallocate assets postjudgment. That isn't to say we don't look at assets as they are producing income relating to the issue of alimony, but we may not reconfigure." The court then concluded that "neither party has realized any gain from any assets acquired postjudgment and sold postjudgment." We

---

[4] General Statutes § 46b-86 (b) is commonly known as the cohabitation statute. We address the court's application of § 46b-86 (b) in part III.

reiterate that although the court is required to consider all of the criteria under § 46b-82, it need not make explicit findings as to each statutory factor. *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 137, 869 A.2d 164 (2005). We conclude that the court properly considered all of the criteria under § 46b-82, including the parties' holdings, in its evaluation of their financial circumstances.

Accordingly, we conclude that the court properly conducted a de novo hearing in refashioning alimony orders.

## II

The plaintiff's second claim is that the court abused its discretion in awarding excessive alimony to the defendant. Specifically, he argues that the court failed to consider his most recent financial affidavit, the affidavit filed on April 28, 2004, rather than the one filed on April 14, 2004, and improperly awarded alimony to the defendant in excess of the plaintiff's net income by failing to take into account the tax consequences of the $3,021,480 signing bonus given to him in 2002 by Salomon Smith Barney in the form of a forgiveness loan amount to be amortized over a seven year period. We do not agree.

The standard of review in family matters is well settled. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the

correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Citations omitted; internal quotation marks omitted.) *Quasius* v. *Quasius*, 87 Conn. App. 206, 208, 866 A.2d 606, cert. denied, 274 Conn. 901, 876 A.2d 12 (2005).

On April 14, 2004, the plaintiff filed a financial affidavit that stated a gross weekly income from Salomon Smith Barney in the amount of $2646. During the hearing on April 15[5] and 16, 2004,[6] the plaintiff, when asked whether $2646 was a correct statement of his total income from Salomon Smith Barney, answered that it was correct. The plaintiff further explained that the monthly sum of $2646 was a total that included his commission income and other taxable benefits, with about $2100 attributable to the commission income and about $500 attributable to the taxable benefits. At no time during the testimony regarding his income did the

[5] The April 15, 2004 hearing transcript provides in relevant part:

"[The Plaintiff's Counsel]: And your financial disclosure, sir, indicates that for 2004, your total income from Smith Barney including those fringes is roughly $2646 per week. Is that correct?

"[The Plaintiff]: Correct. That's correct."

[6] The April 16, 2004 hearing transcript provides in relevant part:

"[The Plaintiff's Counsel]: . . . That income of $2646 per week is based upon the moneys you've received 2004 year to date?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: Does that include commission income?

"[The Plaintiff]: Yes. That's—yes.

"[The Plaintiff's Counsel]: Does it also include the value to which you are taxed on fringes and other benefits?

"[The Plaintiff]: Yes. There is . . . approximately a $500 additional allocation for other Smith Barney benefits that they . . . claim I receive.

"[The Plaintiff's Counsel]: Okay. But that's all inclusive of both commission and all your other benefits.

"[The Plaintiff]: Yes. The commission number was closer to $2100."

plaintiff state that $2646 was an error that required correction. Nonetheless, on April 28, 2004, the plaintiff filed an updated financial affidavit in which he revised and restated the amount of his gross weekly income from Salomon Smith Barney as $2011. The plaintiff claims that during his cross-examination, his attention was drawn to the error on his financial affidavit and, for that reason, he submitted the April 28, 2004 financial affidavit to reflect his correction of the error. At the start of the hearing on April 28, 2004, the plaintiff's counsel reported to the court that the plaintiff "has also reviewed his income year today, and there is a change in that to reflect the actual dollars paid versus the amount of income that he had, including the value of fringe benefits . . . ." The record does not show that there was any further explanation of that change. In his brief, the plaintiff also did not explain why he believed that revision was needed. The plaintiff merely claims that neither the court nor the defendant challenged the submission of the later financial affidavit and that the court should have relied on the later financial affidavit in its calculations. We have, on the one hand, the plaintiff's clear testimony on two different days that $2646 was a correct statement of his total income. On the other hand, we have an unexplained revision of that figure on a financial affidavit submitted after the plaintiff's testimony was given, in addition to a request from the plaintiff in his brief that the court simply accept that unexplained revision.

The plaintiff argues that "despite ample opportunity, neither [the defendant] nor the trial court ever challenged [the plaintiff's] submission of the corrected financial affidavit." "It is axiomatic [however] that [t]he trier [of fact] is free to accept or reject, in whole or in part, the evidence offered by either party." (Internal quotation marks omitted.) *Olson* v. *Olson*, 71 Conn. App. 826, 833, 804 A.2d 851 (2002). The court did not

abuse its discretion when it employed the total income figure in the April 14, 2004 financial affidavit, verified by the plaintiff's testimony during the hearing, in its calculation of the plaintiff's gross income for the purpose of awarding alimony.

The plaintiff next argues that alimony was awarded in excess of his net income because of a failure to base the award on net income. More specifically, the plaintiff argues that the court failed to take into consideration the tax consequences of his Salomon Smith Barney loan forgiveness and imputed interest.

During the hearing on April 15, 2004, the plaintiff testified that he had received in or about February, 2002, a $3,021,480 signing bonus from Salomon Smith Barney in the form of a forgivable promissory note. Over the course of seven years, the plaintiff annually receives a loan forgiveness of one-seventh of the full amount, or $431,000, that is included in his taxable gross income.[7] Each year, the plaintiff then reports the outstanding balance of the loan as a liability. The plaintiff also explained during his testimony that there is an imputed interest on the loan, which is also included in his gross income.[8] The plaintiff stated on both his financial affidavits[9] and during testimony[10] that $553,411

---

[7] Section 61 (12) of title 26 of the United States Code defines gross income to include income from the discharge of indebtedness.

[8] The plaintiff testified that "the Internal Revenue Service requires that in conjunction with any loan, somebody is designated to have paid interest and somebody is designated to have received interest. And if the obligation does not carry a designated interest rate, then the arrangement with Smith Barney is that the interest that is imputed to this loan is considered something—a benefit I received."

[9] In a footnote on both the April 14 and 28, 2004 financial affidavits, the plaintiff stated: "In 2003 and succeeding years Plaintiff will be taxed on Loan Forgiveness and imputed interest on income of $553,411 which income he did not receive."

[10] The following colloquy occurred during direct examination of the plaintiff at the April 15, 2004 hearing:

"[The Plaintiff's Counsel]: In addition to that $431,000 on which you are taxed but receive no cash compensation, you're also taxed, are you not, sir, on the amount of the imputed interest?

was the sum of his yearly loan forgiveness and imputed interest from the Salomon Smith Barney signing bonus. We therefore calculate that the yearly imputed interest alone is $122,411, a figure we obtain by subtracting the yearly loan forgiveness amount of $431,000 from $553,411, which is a figure that is the yearly income and the imputed interest combined.

Although the plaintiff claims that the court failed to take into consideration the tax consequences of his income from the loan forgiveness *and* the imputed interest, the court did not consider the imputed interest in its calculation of gross income. If the court had considered the imputed interest income in its calculation of the plaintiff's total income, the plaintiff's total annual income would have been $691,011. The court did not include, however, the imputed income in awarding alimony and only considered the loan forgiveness, which, according to 26 U.S.C. § 61 (12) (discharge of indebtedness income), must be included in gross income. To the $431,000 loan forgiveness income, the court then added the plaintiff's direct earned income as reported on the April 14, 2004 financial affidavit in the amount of $137,000[11] to arrive at the plaintiff's gross income of $568,000. From that total for the plaintiff's gross income, the court's May 25, 2004 articulation and order delineates how it arrived at a calculation of the plaintiff's net annual income. The court then applied a tax rate of 44 percent and arrived at a net annual income amount of $318,416. Therefore, the alimony award of $108,000 yearly ($9000 monthly), which represents a substantial reduction from the original alimony order

"[The Plaintiff]: Correct.

"[The Plaintiff's Counsel]: And did you reflect that amount for 2003 on your financial affidavit as $553,411? . . .

"[The Plaintiff]: Yes. That's the aggregate amount."

[11] The plaintiff testified that his weekly direct earned income was $2646, which is a yearly total of $137,600.

of $150,000 yearly ($12,500 monthly), is clearly not in excess of the plaintiff's net income.

We therefore conclude that the court did not award excessive alimony to the defendant. There was no abuse of discretion.

### III

The plaintiff next claims that the court improperly fashioned new alimony orders by failing to find that the defendant's living situation met the definition of cohabitation under § 46b-86 (b). We disagree.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 844, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005).

Section 46b-86 (b), which is commonly known as the cohabitation statute, provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspen-

sion, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party." In other words, "[i]n accordance with General Statutes § 46b-86 (b) and the holding in *DeMaria* [v. *DeMaria*, 247 Conn. 715, 722, 724 A.2d 1088 (1999)], before the payment of alimony can be modified or terminated, two requirements must be established. First, it must be shown that the party receiving the alimony is cohabitating with another individual. If it is proven that there is cohabitation, the party seeking to alter the terms of the alimony payments must then establish that the recipient's financial needs have been altered as a result of the cohabitation." *DiStefano* v. *DiStefano*, 67 Conn. App. 628, 633, 787 A.2d 675 (2002).

Although the court did not make a specific finding as to the first prong requiring cohabitation, it did address the second prong requiring a change of financial circumstances. As to the second prong, it is the plaintiff's burden to prove that the defendant's living arrangements caused a change of circumstances so as to alter the defendant's financial needs. See id., 632–33. In *DiStefano*, this court held that "the nonmarital union must be one with attendant financial consequences before the hearing court may alter an award of alimony." (Internal quotation marks omitted.) Id., 633. The plaintiff did not show to the satisfaction of the court that the living arrangement of the defendant caused a change of circumstances so as to alter her financial needs. The court stated that "in this case the court feels that the examination of [the defendant] was intensive, and the court finds credible her testimony with regard to her relationship with [another individual] and the financial arrangements that they have. However, she may disingenuously characterize those financial arrangements. Nevertheless, the court finds that they do not meet the statutory definition of cohabitation."

Our examination of the record further demonstrates that there was sufficient evidence before the court to support its conclusion that the defendant's living arrangements had not brought about a change of circumstances so as to alter her financial needs. During a four day hearing, the court heard ample testimony from the defendant regarding her living arrangements. The details of her relationship with the other individual were examined, and her financial affidavit and other financial and property documents were brought before the court for an assessment of the defendant's financial circumstances. We conclude that the court properly determined that the defendant's living situation did not meet the definition of cohabitation under § 46b-86 (b).

The judgment is affirmed.

In this opinion the other judges concurred.

