******************************************

    The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# KATHLEEN BUDRAWICH *v.* EDWARD BUDRAWICH, JR.
## (AC 41125)

Alvord, Bright and Bear, Js.*

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the postjudgment rulings of the trial court modifying his alimony obligation and denying his motion to reassign to a different court the plaintiff's motion for an order seeking reimbursement from him for certain expenses of the parties' children. The defendant also challenged on appeal the trial court's granting of the plaintiff's motion to correct the court's memorandum of decision. The trial court had requested of the parties a waiver of the 120 day deadline mandated in the applicable rule of practice (§ 11-19) to issue a decision on the plaintiff's motion for an order seeking reimbursement. When the defendant did not respond to the request, a status conference was scheduled at which the plaintiff agreed to extend the 120 day deadline but which the defendant did not attend because, he asserted, he went to the incorrect courthouse. The court stated at the status conference that it would proceed with the agreement of counsel. The defendant thereafter sought reassignment of the plaintiff's motion for an order, claiming that the court had failed to render a timely decision under Practice Book § 11-19. The defendant's motion was assigned to a different court, which denied the motion after indicating that the prior court had found that the defendant consented to the extension of time. The prior court then ruled in favor of the plaintiff on her motion for an order. *Held*:

1. The trial court's finding that the defendant had consented to the prior court's request for an extension of time to rule on the plaintiff's motion for an order was clearly erroneous, the court having been required under Practice Book § 11-19 to reassign the plaintiff's motion to a different judge; the defendant timely filed his motion for reassignment, there was no evidence to support a finding of consent, and, although this court did not condone the defendant's failure to respond to the court's e-mail or to attend the status conference, those failures could not be construed as a waiver of the 120 day deadline.

2. The trial court improperly granted the plaintiff's motion to modify alimony, as its construction of the dissolution judgment's alimony provision was unclear and its determination that the plaintiff met her burden to establish a substantial change in circumstances was predicated in part on a clearly erroneous factual finding as to her medical expenses:

   a. The trial court failed to reduce the plaintiff's weekly expenses by the amount of the uninsured medical expenses she listed on her financial affidavit but later withdrew, and, as a result, the court improperly found that approximately 30 percent of her weekly expenses went to medical expenses when the court should have found that 11 percent went to those expenses; accordingly, this court did not need to address the defendant's claim that the trial court improperly granted the plaintiff's motion to correct and issued a corrected memorandum of decision, as there remained no judgment that could be corrected in light of this court's conclusion that the trial court improperly granted the plaintiff's motion to modify and this court's reversal of the trial court's judgment.

   b. The alimony provision in the dissolution judgment did not relieve the plaintiff of her burden to demonstrate a substantial change in circumstances, as the language of the provision expressed the court's intention to preclude modification as to term and to permit it as to amount, but only if the plaintiff's earnings fell below $100,000 per year; the alimony provision did not permit a second look upon the occurrence of a specified event, it did not state that a specified event shall be considered a substantial change in circumstances or that a party shall have the right to seek a modification upon the occurrence of a specified event without showing a substantial change in circumstances, and it gave no indication that the court intended to permit the plaintiff to obtain de novo review of

the defendant's alimony obligation without first showing a substantial change in circumstances.

*(One judge concurring and dissenting)*

3. The defendant's claim that the trial court improperly granted his motion to modify his alimony obligation downward was rendered moot, the relief sought in the defendant's motion having been afforded to him as a result of this court's conclusion that the trial court improperly granted the plaintiff's motion to modify alimony.

Argued February 3—officially released September 22, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Abery-Wetstone, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Sommer, J.*, granted the plaintiff's motion for modification of alimony, and the defendant appealed to this court; subsequently, the court, *Sommer, J.*, granted the plaintiff's motion to correct the court's memorandum of decision modifying alimony and issued a corrected memorandum of decision, and the defendant filed an amended appeal; thereafter, the court, *Wenzel, J.*, denied the defendant's motion for reassignment; subsequently, the court, *Sommer, J.*, granted the plaintiff's motion for order and issued an order requiring the defendant to pay certain unreimbursed expenses, and the defendant filed an amended appeal; thereafter, the court, *Wenzel, J.*, granted the defendant's motion for modification of alimony, and the defendant filed an amended appeal. *Reversed in part*; *further proceedings*.

*Edward Budrawich, Jr.*, self-represented, the appellant (defendant).

*Kathleen Budrawich*, self-represented, the appellee (plaintiff).

*Opinion*

ALVORD, J. The self-represented defendant, Edward Budrawich, Jr., appeals from the trial court's rulings on postjudgment motions filed by both him and the self-represented plaintiff, Kathleen Budrawich. On appeal, the defendant argues that the court improperly (1) denied his motion for reassignment of the plaintiff's motion for order, (2) granted the plaintiff's motion to modify alimony, (3) granted the plaintiff's motion to correct and issued a corrected memorandum of decision, and (4) modified his alimony obligation pursuant to his motion to modify alimony. We agree with the defendant's first and second claims and, accordingly, reverse the judgment of the court. In light of our resolution of the defendant's first two claims, we need not address his third claim and we conclude that his fourth claim is rendered moot.

The following facts, as set forth by this court in a prior appeal; *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 115 A.3d 39, cert. denied, 317 Conn. 921, 118 A.3d 63 (2015); and procedural history are relevant to our resolution of this appeal. The parties were married in 1982, and had three children. Id., 631. "The plaintiff filed an action seeking dissolution of the parties' marriage in June, 2004. In June, 2006, the parties reached an agreement regarding a parenting plan, which the court [*Abery-Wetstone, J.*] found to be in the best interests of the children. Accordingly, it approved and incorporated the agreement by reference into the judgment of dissolution. . . . The parties also entered into a binding arbitration agreement in November, 2006, and a corrected decision and award was issued on May 30, 2007, which the court approved at the time of dissolution. . . . After approving the parties' agreement and the decision of the arbitrator, on November 28, 2007, the court rendered judgment dissolving the parties' twenty-five year marriage." (Internal quotation marks omitted.) Id., 631–32. On November 29, 2007, the court amended its memorandum of decision to add a paragraph concerning alimony, which it stated had been deleted inadvertently from the original decision. That paragraph (alimony provision) stated: "The husband shall pay to the wife the sum of $1.00 per year as alimony. Payment shall be made, during the husband's lifetime and until the wife's death, remarriage, or suspension of alimony due to cohabitation pursuant to the statute and case law or November 28, 2022. Alimony shall be modifiable as to amount if the wife earns less than $100,000 per year. Alimony shall not be modifiable as to term."

Postjudgment proceedings in this dissolution case resulted in two prior appeals. The first appeal is not relevant to our discussion. The second appeal concerned, inter alia, the trial court's order requiring the parties to submit to arbitration to resolve their dispute concerning reimbursement for past expenses that each

party had incurred on behalf of their minor children. *Budrawich* v. *Budrawich*, supra, 156 Conn. App. 630. On April 21, 2015, this court issued its decision, in which it concluded that "the [trial] court erred in ordering the parties to submit to arbitration to resolve their dispute over unreimbursed expenses because the parties did not execute a voluntary arbitration agreement." Id., 648. This court reversed the judgment only as to the order requiring the parties to submit to arbitration. Id., 650.

The parties also filed several postjudgment motions. The defendant has appealed from the court's rulings on his March 1, 2018 motion for reassignment of the plaintiff's November 25, 2015 motion for order seeking reimbursement for the children's expenses and unreimbursed medical expenses, the plaintiff's April 20, 2017 motion to modify alimony and her December 6, 2017 motion to correct the court's memorandum of decision rendered thereon, and the defendant's March 23, 2018 motion to modify alimony. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim on appeal is that the court improperly denied his motion for reassignment of the plaintiff's motion for order. Specifically, he argues that he did not consent to the court's requested extension of time to issue its decision on the plaintiff's motion for order and, therefore, his motion seeking to have the motion for order reassigned to another judge should have been granted. The plaintiff responds that the defendant has "waived any right to claim that matters before the court are reassigned" by his failure to respond to the court's e-mails requesting an extension and to attend a status conference scheduled following his failure to respond to the e-mails. We agree with the defendant that the court improperly denied his motion for reassignment.

The following additional undisputed facts and procedural history are relevant to this claim. On November 25, 2015, the plaintiff filed a motion for order, alleging that she was owed reimbursement for the children's extracurricular expenses and unreimbursed medical expenses. The court, *Sommer, J.*, held hearings over six days, beginning on August 8, 2016, and ending on September 27, 2016. Both parties filed posthearing memoranda of law on October 27, 2017. With the 120 day deadline to issue a decision on the plaintiff's motion for order approaching; see Practice Book § 11-19; the case flow coordinator from the Stamford Superior Court e-mailed the parties on February 16, 2018, on behalf of Judge Sommer, to request a waiver of the 120 day deadline. The defendant did not respond to the e-mail. A status conference was scheduled for February 22, 2018. On that date, the plaintiff's counsel appeared before the court, *Sommer, J.*, in Stamford.[1] Neither the plaintiff nor the defendant were present. The plaintiff's

counsel informed the court that the plaintiff was not present because she was ill, and that counsel did not know why the defendant was not present.

The court stated that the defendant "had been contacted with the request for the extension of time for the court to have additional time to render its decision. And because he did not reply to case flow, it was necessary for the court to schedule this hearing today to give him an opportunity to come and to be heard on the requested extension." The court indicated that its requested extension was due to the "very, very heavy press of business in the family assignment resulting in the court handling a vast volume of cases" and "the additional complication" of completing a decision in this matter where the physical file remained in Bridgeport and that "it was not clear that all of the exhibits that are related to [the motion for children's expenses] are here with me." Accordingly, the court sought an additional period of time to issue its ruling. The plaintiff's counsel stated that the exhibits submitted were essential for the court to render its decision and indicated that "there's no objection on our part" to the court's proposed March 30, 2018 deadline to issue its decision.

The court then stated: "Well, I will consider that [the defendant] has been duly notified by case flow of the request for the extension. Not having received any response from [the defendant], this court scheduled a hearing this afternoon to provide [the defendant] an opportunity to appear and speak to the requested extension. [The defendant] has not appeared, it now being 2:25, the matter having been scheduled for two o'clock. And the court will proceed on with the agreement of counsel to the extension to March 30, which I would anticipate being able to over the next couple of weeks either have the file, those crucial exhibits, and they are crucial, I do remember their production and initial review throughout the testimony. And the exhibits are essential to this court's decision. So that matter will be addressed."

On March 1, 2018, pursuant to Practice Book § 11-19, the defendant filed a motion for reassignment of the plaintiff's motion for order on the ground that the court had not rendered a timely decision on the plaintiff's motion. On March 22, 2018, the plaintiff filed an objection, representing that the "Family Caseflow Coordinator for Judge Sommer in Stamford, CT, e-mailed all parties 3 times on this matter on 2/16/18 and twice on 2/21/18. The plaintiff replied on 2/19/18, making that 4 e-mails sent to [the defendant]. The defendant . . . failed to reply to any of the e-mails . . . ." The plaintiff attached to her objection what she represented were copies of the e-mails[2] and further argued that the defendant had failed to appear for the February 22, 2018 status conference, which had been scheduled because

of the defendant's failure to respond to the e-mails.

The parties appeared before the court, *Wenzel, J.*, on March 21, 2018. The defendant argued that he missed the status conference because he had appeared at the courthouse located at 1061 Main Street in Bridgeport, the courthouse identified as the location of the status conference in the JDNO notice. Following argument on the motion for reassignment, the court confirmed that the only issue for its consideration was "whether or not Judge Sommer's finding that there was consent to the extension was proper." The court then stated: "I am put in the unfortunate position of being asked to second-guess Judge Sommer's decision. I am not in any position to do that. I'm not saying that her finding of consent that the extension should be allowed is right or wrong. I'm in no way as well equipped as she was to address that issue or make that finding . . . . So based on another judge's finding of consent, I have to deny this motion."

On April 2, 2018, the court, *Sommer, J.*, issued its ruling on the plaintiff's motion for order.[3] The court ordered the defendant to pay the plaintiff the sum of $21,687, the amount he owed of the children's expenses and unreimbursed medical expenses. On April 9, 2018, the defendant filed an appeal from Judge Wenzel's denial of his motion for reassignment, which appeal was treated by this court as an amended appeal.

We first set forth applicable legal principles. Practice Book § 11-19 provides a 120 day time limit for the court to issue a decision on short calendar matters submitted to it. Section 11-19 (a) provides that a judge "shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time limit is waived by the parties." It further provides that "[i]f a decision is not rendered within this period the matter may be claimed in accordance with subsection (b) for assignment to another judge or referee." Practice Book § 11-19 (a). Section 11-19 (b) provides that "[a] party seeking to invoke the provisions of this section shall not later than fourteen days after the expiration of the 120 day period file with the clerk a motion for reassignment of the undecided short calendar matter which shall set forth the date of submission of the short calendar matter, the name of the judge or referee to whom it was submitted, that a timely decision on the matter has not been rendered, and whether or not oral argument is requested or testimony is required. The failure of a party to file a timely motion for reassignment shall be deemed a waiver by that party of the 120 day time."

This court, in *Reyes* v. *Bridgeport*, 134 Conn. App. 422, 431, 39 A.3d 771 (2012), addressed whether "a court is required to grant a motion for reassignment if properly and timely filed." The court stated: "We read subsection (a) to provide that unless there is a waiver by the parties, a judge is required to issue a decision on

a short calendar matter within 120 days, and if the judge fails to do so, that the matter must be reassigned at any party's request subject to that party's compliance with subsection (b). This reading is further supported by the language found in subsection (b). . . . If a party wants to invoke the right to have a matter reassigned, he or she must timely file a motion for reassignment. It is only if a party fails to do so, or otherwise waives the 120 day filing deadline, that he or she waives the right to have the matter reassigned. . . . This reading necessarily implies that by timely filing a motion for reassignment, a party who has not waived the filing deadline is able to invoke his or her right to reassignment, which a court must then grant." (Citations omitted; internal quotation marks omitted.) Id., 431–32.

In the present case, there is no dispute that the court did not issue its decision within the 120 day limit or that the defendant timely filed a motion for reassignment. The only issue for our consideration is whether the court properly found that the defendant, by his conduct in failing to respond to the case flow coordinator's e-mails and failing to appear for the status conference, waived the 120 day filing deadline.

"Waiver is the intentional relinquishment or abandonment of a known right or privilege. . . . As a general rule, both statutory and constitutional rights and privileges may be waived. . . . Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . . Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) Id., 429–30. "[B]ecause waiver [is a question] of fact . . . we will not disturb the trial court's [finding] unless [it is] clearly erroneous." (Internal quotation marks omitted.) *Northland Two Pillars, LLC* v. *Harry Grodsky & Co.*, 133 Conn. App. 226, 230, 35 A.3d 333 (2012).

We conclude that the court's finding of consent to the requested extension is clearly erroneous. First, Judge Wenzel's suggestion that Judge Sommer had made a finding that the defendant had consented to the extension is inaccurate. Our review of Judge Sommer's remarks during the February 22, 2018 status conference reveals that she stated that the defendant had not responded to the requested extension, had not appeared for the status conference, and that she was proceeding with the agreement of the plaintiff's counsel to the requested extension.

Moreover, although we do not condone the defen-

dant's failure to respond to the case flow coordinator's e-mail requesting his consent to an extension, we cannot construe his silence in failing to respond to an e-mail from the case flow coordinator as a waiver of the 120 day filing deadline. With respect to the defendant's failure to appear for the status conference, we observe that the JDNO notice scheduling the conference, of which Judge Wenzel took judicial notice, incorrectly identified its location as 1061 Main Street in Bridgeport, when the hearing actually took place in Stamford. Again, although we do not condone the defendant's failure to communicate with the court or the plaintiff's counsel following his missing the status conference, we cannot construe his failure to appear at the status conference held at the Stamford Superior Court as a waiver of the 120 day filing deadline. Because the defendant timely filed his motion for reassignment, and there was no evidence in the record to support a finding of consent to an extension or waiver of the 120 day filing deadline, the court was required to order that the matter be reassigned to another judge. See *Reyes* v. *Bridgeport*, supra, 134 Conn. App. 431–32. We thus conclude that the court erred in denying the plaintiff's motion for reassignment. Accordingly, we reverse the court's ruling on the plaintiff's motion for order.

## II

We next address the defendant's claim that the court improperly granted the plaintiff's motion to modify alimony. In his request for relief, the defendant asks this court to "reverse the judgment of the trial court and remand the matter for a new hearing." We agree with the defendant that the court improperly granted the plaintiff's motion to modify alimony and that he is entitled to a new hearing.

Before turning to the merits of the defendant's claim with respect to the plaintiff's motion to modify alimony, we note that the defendant also claims on appeal that the court, following the issuance of its decision on the plaintiff's motion to modify alimony, improperly granted the plaintiff's motion to correct and issued a corrected memorandum of decision. We need not address the defendant's claim with respect to the court's issuance of a corrected memorandum of decision. Because we conclude that the court improperly granted the plaintiff's motion to modify alimony, which requires that we reverse the judgment of the trial court, there remains no judgment that could be corrected. See *Central Connecticut Teachers Federal Credit Union* v. *Grant*, 27 Conn. App. 435, 438–39, 606 A.2d 729 (1992) (declining to address second claim that court improperly increased order of payments from $75 to $150 per month pursuant to motion to correct judgment, because conclusion on first claim required reversal of judgment, including order of payments). We therefore refer to the court's corrections, without passing on their propriety,

only to demonstrate; see footnote 10 of this opinion; that the corrections do not disturb our conclusion that the court improperly granted the plaintiff's motion to modify alimony.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. On April 20, 2017, the plaintiff filed a motion to modify alimony. She alleged that she had lost her job and had health setbacks, and that the defendant's income had increased, while her earning capacity was less. On June 9, 2017, the court held a hearing on the plaintiff's motion, during which both parties testified.

On November 9, 2017, the court issued a memorandum of decision in which it granted the plaintiff's motion to modify alimony. It found that, at the time of the dissolution in 2007, the plaintiff was employed by Pitney Bowes at a gross annual income of approximately $122,000. The court credited the plaintiff's testimony that, following the termination of her employment with Pitney Bowes in the fall of 2016, "despite having made continuing good faith efforts to seek employment she has been unable to obtain employment at any salary level near her former level." It found that "she has been unable to obtain employment at a salary that would enable her to meet her financial needs. The only employment opportunities available to the plaintiff are near minimum wage positions in retail employment which do not guarantee a full [forty] hour week." The court credited the plaintiff's estimation that "at best she will be able to earn $30,000 per year." The court found: "These jobs do not pay bonuses, have minimal wage increases and do not provide benefits comparable to the benefits she received as a Pitney Bowes employee. Although the plaintiff has retirement assets, these are not accessible at this time and should not be depleted to pay for her present living expenses."

The court found: "[The plaintiff's] combined expenses for medical insurance premiums and uninsured medical expenses constitute approximately 30 percent of her weekly expenses. The additional cost of obtaining medical insurance independently through COBRA[4] and the out-of-pocket expenses which the plaintiff incurs due to the medical issues which she faces subsequent to the dissolution support her claim that she has experienced a substantial change in circumstances." (Footnote added.) The court concluded its findings of fact by stating that, "[a]lthough the plaintiff has planned for her retirement, she is now faced with unforeseen financial need for support at least seven years before she will be able to receive social security benefits and well before she is able to access her retirement savings." See footnote 7 of this opinion.

Turning to the two step inquiry required in the adjudication of a motion to modify alimony, the court first found that the plaintiff had met her burden of establish-

ing a substantial change in circumstances. The court referred to the alimony provision as stating that "the plaintiff would receive alimony in the amount of $1 per year until November 28, 2022, and that if the plaintiff's income fell below $100,000 annually that would constitute a substantial change in circumstances as a predicate to modification."[5] The court additionally found: "[The plaintiff's] income has effectively been eliminated through circumstances beyond her control. She has established through credible evidence that she has made good faith efforts to obtain employment but has been unsuccessful. The court concludes based on the credible evidence that the job market in Bradenton, Florida, does not provide opportunities for fifty-eight year old women with the plaintiff's experience. The plaintiff's current financial affidavit reflects that she has exhausted her severance and unemployment benefits. Accepting a minimum wage job would still put her income 70 percent below the level she earned at the time of dissolution. Her total weekly expenses, including weekly liability expenses, have also decreased, but are well beyond her ability to meet them. On its face, the plaintiff's current financial affidavit shows that she is not meeting her expenses each week. The court does not find that the defendant's financial circumstances have changed materially."

Next, the court considered the statutory criteria set forth in General Statutes § 46b-82 (a). It found: "The defendant is sixty years old. He did not present any health issues, appears to be healthy and is still employed at Pitney Bowes. The plaintiff is a fifty-eight year old woman who, despite a successful career internally at a single employer, is unable to compete more broadly in the current job environment and has demonstrated that the only jobs available to her pay [far] less than her previous job. The plaintiff's income has decreased significantly in the decade since she lost her job in the fall, 2016. She also testified credibly that she has health issues which limit her employability." The court granted the motion to modify alimony, which was made retroactive to April 20, 2017; see footnote 7 of this opinion; and ordered the defendant to pay alimony to the plaintiff in the amount of $700 per week.[6]

On December 6, 2017, the plaintiff filed a motion to correct the court's November 9, 2017 memorandum of decision. On February 22, 2018, the plaintiff's counsel appeared before the court, and the court took up the matter of the plaintiff's motion to correct. The plaintiff's counsel described each requested correction, and the court stated on the record that it had "confirmed that the requested corrections are all warranted. They are each of them as presented proper, based on the actual record in the case and the findings by the court at trial. So whether it was to reflect the correct date and amount of retroactivity, to reflect the court's intention with respect to the plaintiff's ability to access social security

benefits and the correct reference to the underlying decision by Judge Abery-Wetstone. So [the motion to correct] is granted. The court will file a corrected memorandum of decision reflecting those items." On July 24, 2018, the defendant filed an objection to the plaintiff's motion to correct. On September 27, 2018, the court issued a corrected decision,[7] and the defendant filed an amended appeal therefrom.

Prior to the court's issuance of the corrected memorandum of decision, the defendant had filed a motion for articulation. On November 16, 2018, the court issued an articulation. The court stated that it found the plaintiff's earning capacity to be "in the range of $30,000-$35,000 . . . ." The court cited as the basis for its earning capacity finding the credible testimony of the plaintiff. The court articulated that it accepted the plaintiff's testimony that "her skills were self-taught and specifically adapted to the needs of Pitney Bowes. Furthermore, the court found the plaintiff's testimony credible that despite good faith efforts she has been unable to become employed, that the local job market in Bradenton, Florida, does not have employment opportunities for individuals with her skills, that technology support jobs are now being filled by younger individuals with technology degrees and training rather than self-taught individuals such as the plaintiff, that jobs available to her are near minimum wage retail position and that at age fifty-six[8] she has found it difficult to be considered for employment." (Footnote added.)

At the outset, we set forth our standard of review and relevant legal principles. "[W]e will not disturb the trial court's ruling on a motion for modification of alimony or child support unless the court has abused its discretion or reasonably could not conclude as it did, on the basis of the facts presented." (Internal quotation marks omitted.) *Norberg-Hurlburt* v. *Hurlburt*, 162 Conn. App. 661, 672, 133 A.3d 482 (2016). Furthermore, "[t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Steller* v. *Steller*, 181 Conn. App. 581, 593, 187 A.3d 1184 (2018).

"[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony . . . the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statu-

tory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. . . . More specifically, these criteria, outlined in. . . § 46b-82, require the court to consider the needs and financial resources of each of the parties and their children, as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties. . . . The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties. . . .

"Thus, [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the § 46b-82 criteria, make an order for modification. . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671–74, 81 A.3d 215 (2013).

Before turning to the defendant's arguments, we note that, despite our careful reading of the court's memorandum of decision, it is unclear whether the trial court (1) considered, pursuant to § 46b-86, whether the plaintiff had established a substantial change in circumstances or (2) construed the alimony provision to abrogate the statutory requirement of proof of a substantial change in circumstances. See footnote 11 of this opinion. Accordingly, in part II A of this opinion, we assume that the court determined that the plaintiff met her burden of demonstrating a substantial change of circumstances pursuant to the requirement stated in § 46b-86. Because we conclude that the court's determination

of a substantial change in circumstances was predicated, in material part, on a clearly erroneous factual finding as to the plaintiff's medical expenses, we reverse the judgment on the plaintiff's motion to modify on this basis.

Because the question of how the dissolution court's alimony order should be interpreted will arise on remand, we elucidate the order, as it is a question of legal interpretation. Language from the trial court's memorandum of decision on the plaintiff's motion to modify can be construed as suggesting that it interpreted the alimony provision as directing that the plaintiff automatically satisfied, or was relieved from, her obligation of showing a substantial change in circumstances by virtue of her earning less than $100,000 per year. We demonstrate, in part II B of this opinion, why this reading of the alimony provision is legally improper.

A

On appeal, the defendant raises a number of arguments in support of his claim that the court erred in granting the plaintiff's motion to modify alimony.[9] We first address his argument that the court, in considering the plaintiff's weekly expenses, improperly failed to reduce the expenses by the amount of uninsured medical expenses that she originally had listed on her financial affidavit but later withdrew. We agree with the defendant.

Although the plaintiff averred on her financial affidavit that she incurs $291 weekly in uninsured medical/dental expenses, she requested, after consultation with her counsel, that the court remove the $291 weekly expense and substitute zero for that amount. Her counsel canvassed her as to that request during the July 9, 2017 hearing, and the court stated that it was "noted for the record." In its memorandum of decision, however, the court found that "[the plaintiff's] combined expenses for medical insurance premiums and uninsured medical expenses constitute approximately 30 percent of her weekly expenses."

A review of the court's mathematical calculations necessarily underlying that 30 percent finding reveals that, despite the plaintiff's request to remove the $291 weekly expense from consideration of her expenses, and the court noting that request, the court failed to do so. The plaintiff listed on her financial affidavit total weekly expenses in the amount of $1593, which, after subtracting the $291 in uninsured medical/dental expenses, amounts to $1302. The plaintiff's financial affidavit shows $141 in weekly expenses for medical/dental insurance premiums. Had the court removed the uninsured medical/dental expenses in accordance with the plaintiff's request and considered only the $141 in medical/dental insurance premium expenses, the court's calculations would have resulted in a finding

that the plaintiff's remaining medical/dental insurance premium expenses constituted approximately 11 percent of her total weekly expenses ($141 divided by $1302). Thus, it is evident that the court's finding that "approximately 30 percent of [the plaintiff's] weekly expenses" went to medical expenses improperly included the $291 in uninsured expenses that the plaintiff abandoned.

In its memorandum of decision, the court identified the "out-of-pocket expenses which the plaintiff incurs due to the medical issues which she faces" as "support[-ing] her claim that she has experienced a substantial change in circumstances." Accordingly, the court's determination of a substantial change in circumstances was premised, at least in part, on its clearly erroneous factual finding regarding the plaintiff's uninsured medical/dental expenses. See *Sargent* v. *Sargent*, 125 Conn. App. 824, 827–28, 827 n.7, 9 A.3d 799 (2011) (reversing court's ruling reducing alimony obligation of defendant where ruling was premised on clearly erroneous finding that defendant incurred expenses of $777 monthly to include plaintiff on his medical coverage; defendant's financial affidavit showed no deduction for medical expenses and expenses associated with medical coverage "costs were borne solely by the defendant's employer and the plaintiff in the form of medical deductibles and co-pays").

The court's clearly erroneous finding as to the plaintiff's expenses requires that the court's judgment modifying the defendant's alimony obligation be reversed and the case remanded for a new hearing on the plaintiff's motion for modification.[10]

B

We next address the defendant's argument that the court improperly construed the alimony provision as stating that "if the plaintiff's income fell below $100,000 annually that would constitute a substantial change in circumstances as a predicate to modification."[11] He argues that "the divorce decree prevented the plaintiff from moving for modification if she earned more than . . . $100,000. If she made less than $100,000 she could move for modification, but still needed to present evidence showing how a change in her earning capacity, expenses, assets and liabilities substantiated a substantial change in circumstances from the prior order." Although it is unclear to us whether the court construed the alimony provision to mean that the plaintiff's income falling below $100,000, in and of itself, constituted a substantial change in circumstances, we address this issue because it may arise on remand.

We first set forth the standard of review. "Because [t]he construction of a judgment is a question of law for the court . . . our review of the . . . claim is plenary. As a general rule, judgments are to be construed

in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Perry* v. *Perry*, 156 Conn. App. 587, 593, 113 A.3d 132, cert. denied, 317 Conn. 906, 114 A.3d 1220 (2015).

We next set forth relevant principles of law. Section 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be . . . modified by the court upon a showing of a substantial change in the circumstances of either party . . . ." "This statutory provision suggests a legislative preference favoring the modifiability of orders for periodic alimony . . . [and requires that] the decree itself must preclude modification for this relief to be unavailable. . . . If an order for periodic alimony is meant to be nonmodifiable, the decree must contain language to that effect. . . . Such a preclusion of modification must be clear and unambiguous. . . . If a provision purportedly precluding modification is ambiguous, the order will be held to be modifiable." (Footnote omitted; internal quotation marks omitted.) *Burke* v. *Burke*, 94 Conn. App. 416, 422, 892 A.2d 964 (2006). "In determining whether the alimony award is modifiable or nonmodifiable, only the dissolution decree itself may be used." (Footnote omitted; internal quotation marks omitted.) Id.

This court previously has construed certain language contained in a separation agreement to relieve the party seeking to modify alimony of the statutorily mandated burden of demonstrating that a substantial change in circumstances has occurred. See *Steller* v. *Steller*, supra, 181 Conn. App. 584, 584–85 n.1; *Taylor* v. *Taylor*, 117 Conn. App. 229, 231, 978 A.2d 538, cert. denied, 294 Conn. 915, 983 A.2d 852 (2009). In *Steller* v. *Steller*, supra, 584–85 n.1, this court considered the term of a separation agreement that provided in relevant part: "It is acknowledged that the husband has the right to retire upon reaching the age [of] sixty-five (65) years and he may petition the [c]ourt to take a 'second look' for a hearing to determine the amount of alimony which he shall pay to the wife. The retirement of the husband at age sixty-five (65) shall be considered a substantial change in circumstances, but in any event, even if the husband does not retire at age sixty-five (65), he shall have a right to seek a modification of alimony at age sixty-five (65) without the need of showing a substantial change in circumstances." This court concluded that "the plain language of the agreement permitted the

court to take a fresh look at the parties' financial circumstances after the defendant reached his sixty-fifth birthday." Id., 602. This court stated that the trial court did not need to find a substantial change in circumstances because the language of the agreement permitted the court to conduct a de novo review of the defendant's alimony obligation. Id.

In *Taylor* v. *Taylor*, supra, 117 Conn. App. 232, the parties' separation agreement required the plaintiff to pay alimony in the amount of $60,000 per year. The agreement stated that the "amount shall be modifiable by either party. Upon the [plaintiff's] 65th birthday or the death of the [defendant's] father, whichever shall first occur, the alimony shall be subject to a second-look by the Superior Court for the [s]tate of Connecticut to determine the then appropriate order, if any." (Internal quotation marks omitted.) Id. This court rejected the defendant's argument that "because the agreement failed to include language that after the events mentioned, alimony would be subject to a de novo review, the second look should be based on a substantial change of circumstances." Id. This court construed the agreement to permit the court to "take a fresh look at the parties' financial circumstances either after the plaintiff reached his sixty-fifth birthday or after the death of the defendant's father." Id., 233. In reaching this conclusion it reasoned: "If that was not the intent of the parties, the second look language would have been superfluous because the agreement provided that alimony could be modified at any time if a substantial change of circumstances occurred. The agreement, however, specifically provides that on the happening of either of the two previously mentioned events, alimony may be given a second look. We conclude, therefore, that this language permits a de novo review of the plaintiff's alimony obligation." Id.

In contrast with the language considered in *Steller* and *Taylor*, the relevant language of the present alimony provision states only that "[a]limony shall be modifiable as to amount if the wife earns less than $100,000 per year. Alimony shall not be modifiable as to term." The alimony provision does not permit a "second look" upon the occurrence of a specified event, does not state that the occurrence of a specified event shall be considered a substantial change in circumstances, or that a party shall have the right to seek a modification of alimony upon occurrence of a specified event without showing a substantial change in circumstances. Nor does the alimony provision give any other indication that it was intended by the dissolution court to permit the plaintiff to obtain a de novo review of the defendant's alimony obligation without first showing a substantial change in circumstances. In the absence of such indication, the relevant language of the alimony provision addresses only the issue of whether the alimony award is modifiable or nonmodifiable. Expressed in the

alimony provision is the dissolution court's intention to preclude modification as to the term of the alimony and to permit modification as to the amount, but only if the plaintiff's earnings fall below $100,000 per year. Accordingly, the alimony provision does not relieve the plaintiff of her burden to demonstrate a substantial change in circumstances.

### III

The defendant's final claim on appeal is that the court, *Wenzel, J.*, improperly modified his alimony obligation. He argues, inter alia, that if this court reverses the prior modification of alimony ordered by Judge Sommer, Judge Wenzel's order modifying alimony likewise should be reversed. We conclude that our resolution of the defendant's claim in part II A of this opinion renders the defendant's arguments with respect to his motion to modify alimony moot.

The following additional procedural history is relevant to this claim. On March 23, 2018, the defendant filed a motion to modify alimony. He alleged therein that since the date of the court's November 9, 2017 order regarding alimony, there had been a substantial change in circumstances, in that he had lost his job and was unemployed, had health issues that limit his employment opportunities, and had decreased earning capacity. He further alleged that the plaintiff had cohabitated, had an increased earning capacity, and her financial circumstances had improved. The plaintiff filed an objection on April 23, 2018. On September 18, 2018, the court, *Wenzel, J.*, issued an order regarding the defendant's motion to modify alimony. It found that the defendant had established a substantial change in circumstances, in that the defendant's employment had been terminated and he had been unable to find new employment. The court ordered alimony payments reduced from $700 per week to $350 per week. The defendant filed a motion to reargue, which was denied. The defendant thereafter amended his appeal.

"Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *Pryor* v. *Pryor*, 162 Conn. App. 451, 455, 133 A.3d 463 (2016).

We have concluded in part II A of this opinion that the court improperly granted the plaintiff's motion to modify alimony, and we have reversed the judgment. Reversing the judgment as to the motion for modification has the effect of returning the parties to their status as of the original dissolution judgment, which required the defendant to "pay to the [the plaintiff] the sum of $1.00 per year as alimony." Accordingly, the defendant's motion seeking a downward modification of his alimony obligation is moot, given that the relief sought in that motion has already been afforded the defendant as a result of this court's decision in part II A of this opinion. See *Lynch* v. *Lynch*, 135 Conn. App. 40, 54–55 n.12, 43 A.3d 667 (2012) (arguments challenging rulings on postjudgment motions for modification rendered moot by remand order for new hearing on all financial orders entered by trial court at time of dissolution).[12]

The judgment is reversed only as to the plaintiff's motions for order and to modify alimony and the case is remanded with direction to reassign the plaintiff's motion for order and for a new hearing on the plaintiff's motion to modify alimony; the judgment is affirmed in all other respects.

In this opinion BRIGHT, J., concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiff was represented by counsel in the relevant proceedings before the trial court. The plaintiff also filed her own appearance in addition to counsel.

[2] The defendant confirmed during oral argument before this court that he received e-mails from the court requesting his consent to the extension. He maintained that he did not reply to the e-mails because he received notice that the court scheduled the status conference before he had finished looking into the topic.

[3] In its April 2, 2018 order, the court also found that the defendant's failure to reimburse the plaintiff for the children's expenses was in direct violation of a clear and unambiguous court order. It further found that the defendant had the ability to pay his share of expenses, but wilfully failed to do so. The court ordered the defendant to pay attorney's fees and stated that a hearing would be set for review of the plaintiff's attorney's affidavit of fees.

[4] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 through 1168.

[5] The court stated that, "[a]s a threshold matter, the court has confirmed that the January, 2012 agreement, incorporated by reference in the dissolution judgment, expressly permits modification of the alimony and child support provisions, except with respect to extending the term." See footnote 7 of this opinion.

[6] On November 30, 2017, the defendant filed a motion to reargue the court's November 9, 2017 decision, which motion he subsequently withdrew on May 4, 2018.

[7] The court made the following multiple corrections. First, in its November 9, 2017 memorandum of decision, the court had ordered the modification of alimony retroactive to April 20, 2017, which corresponded with the date the plaintiff filed her motion to modify alimony. In the corrected memorandum of decision, the court ordered the modification of alimony retroactive to May 21, 2017, which corresponded with the date the defendant was served with the motion to modify, in accordance with General Statutes § 46b-86 (a).

Second, in its November 9, 2017 memorandum of decision, the court stated: "As a threshold matter, the court has confirmed that the *January, 2012 agreement*, incorporated by reference in the dissolution judgment, expressly permits modification of the alimony *and child support provisions* except with respect to extending the term." (Emphasis added.) It further stated that "[t]he burden is on the plaintiff, as the moving party, to show

that a substantial change in *his* circumstances has occurred since the parties' divorce in *January, 2012*, so as to warrant a modification of the alimony *and child support provisions*." (Emphasis added.) In the corrected memorandum of decision, the court removed the reference to the January, 2012 agreement and substituted the November, 2007 memorandum of decision. It deleted the references to child support, and changed "his circumstances" to "her circumstances."

Third, in its November 9, 2017 memorandum of decision, the court stated: "The plaintiff is fifty-eight years old and the defendant is sixty years old. Although the plaintiff has planned for her retirement, she is now faced with unforeseen financial need for support *at least seven years before she will be able to receive social security benefits and well before she is able to access her retirement savings*." (Emphasis added.) In the corrected decision, the court stated: "at least seven years before the recommended age to access social security benefits and well before she is able to access her retirement savings without penalty."

Finally, in its November 9, 2017 memorandum of decision, the court stated: "The plaintiff's income has decreased significantly in the decade since *she lost her job in the fall, 2016*." (Emphasis added.) The court changed this sentence to: "The plaintiff's income has decreased significantly in the decade since the 2007 dissolution as a result of losing her job in the fall of 2016."

[8] We note that there exists a discrepancy between the trial court's statement of the plaintiff as fifty-eight years old in its November 9, 2017 memorandum of decision and fifty-six years old in its November 16, 2018 articulation. This discrepancy does not affect our analysis.

[9] In addition to the arguments discussed in this opinion, the defendant also argues that the court improperly denied his request to conduct discovery, made clearly erroneous findings as to the plaintiff's earning capacity and net income, improperly considered expenses of the children, including those incurred following the children's reaching the age of majority, and abused its discretion in awarding the plaintiff $700 per week alimony. Given our conclusion that the court's findings regarding the plaintiff's expenses require us to reverse the judgment of the trial court and to remand the case for a new hearing on the plaintiff's motion to modify alimony, we need not address the defendant's remaining arguments and decline to do so. See *Steller* v. *Steller*, supra, 181 Conn. App. 599.

[10] We note that the court also made erroneous factual findings with respect to the plaintiff's ability to access her retirement assets and social security benefits. In its November 9, 2017 memorandum of decision modifying alimony, the court found that, "[a]lthough the plaintiff has planned for her retirement she is now faced with unforeseen financial need for support at least seven years before she will be able to receive social security benefits and well before she is able to access her retirement savings." The court subsequently corrected this finding to state: "at least seven years before the recommended age to access social security benefits and well before she is able to access her retirement savings without penalty." See footnote 7 of this opinion. The court also stated, in its articulation, that it had "previously addressed these questions" in its corrected memorandum of decision and that it had "clarified its statement regarding the effect of plaintiff's accessing her retirement assets." Specifically, the court articulated that it "did not find based on its comprehensive review of plaintiff's financial circumstances that it was reasonable or fair to require the plaintiff to deplete her retirement assets at this time."

The court's determinations as to the plaintiff's ability to access her retirement assets and social security benefits are not supported by the evidence in the record. The plaintiff presented no evidence as to when she would be able to access her retirement assets, and the only reference in the record to social security was the plaintiff's testimony that she would become social security eligible at age sixty-two and her agreement with her counsel's question that this was "on the early side of receiving benefits . . . ." During oral argument before this court, when asked whether she presented evidence that she could not access her 401 (k) without penalty before the age of sixty-five, the plaintiff responded that she did not present that evidence, and she stated: "I never claimed that." Similarly, when asked during oral argument before this court what evidence was presented showing that it is not recommended to access social security before the age of sixty-five, the plaintiff responded: "I don't think there was any evidence that said that, and it wasn't my claim that I could not access it before that time." Wholly lacking evidence, the court was not in a position to evaluate the plaintiff's ability to access her retirement assets and social security benefits.

[11] In its articulation, the court further stated that it had concluded that "the plaintiff had sustained her burden of showing that a substantial change in circumstances has occurred as a result of the plaintiff's loss of employment through no fault of her own and that she is entitled to receive alimony. Not only did her income decrease below the stipulated $100,000 level which according to the parties' agreement entitled her to alimony, she presented credible evidence of her needs and her effort to find a job." We note that the court previously had referred incorrectly to the alimony provision as part of an agreement; see footnote 7 of this opinion; rather than properly as a provision of the judgment of dissolution.

[12] In the plaintiff's appellate brief, she asks this court to dismiss portions of the defendant's appeal and issue sanctions. As to the plaintiff's arguments for dismissal, she maintains that the defendant's appeal from the November 9, 2017 order granting the plaintiff's motion for modification and his amended appeal from the September 18, 2018 order on the defendant's motion for modification both were untimely. We conclude that the plaintiff has waived her right to seek dismissal of the appeal and amended appeal as untimely. Practice Book § 66-8 provides in relevant part: "Any claim that an appeal . . . should be dismissed, whether based on lack of jurisdiction, failure to file papers within the time allowed or other defect, shall be made by a motion to dismiss the appeal . . . . A motion to dismiss an appeal that claims any defect other than a lack of jurisdiction must be filed within ten days after the filing of the appeal. . . ." See also *Connecticut Commercial Lenders, LLC* v. *Teague*, 105 Conn. App. 806, 809, 940 A.2d 831 (2008) (finding that defendants waived right to claim that appeal should be dismissed as untimely due to failure to file timely motion to dismiss as required by Practice Book § 66-8). In the present case, the plaintiff did not file a motion to dismiss within ten days of the filing of the appeal or the amended appeal and, therefore, she waived her right to challenge the timeliness of both the appeal and the amended appeal.

The plaintiff also requests that this court impose sanctions on the defendant. Specifically, in the plaintiff's statement of relief requested, she asks "this court to consider imposing sanctions on the defendant for [his] misconduct and dismissing all matters on appeal, including but not limited to the cost of printing and shipping [the] plaintiff's brief, [attorney's] fees for [the plaintiff's counsel's] limited appearance, travel fees [the] plaintiff incurred flying from Florida to CT to access court records, and compensation for the time and effort required to respond to this frivolous appeal since it was first filed 12/1/17." The plaintiff cites, as the basis for her sanctions request, various alleged improprieties, including the defendant's attempt to submit new evidence, and she asserts that his appeal is frivolous. We decline to address this issue because the plaintiff failed to make her request in a separate motion. See *Battistotti* v. *Suzanne A.*, 182 Conn. App. 40, 55 n.10, 188 A.3d 798, cert. denied, 330 Conn. 904, 191 A.3d 1000 (2018); see also Practice Book § 85-3; *Tyler* v. *Tyler*, 163 Conn. App. 594, 598 n.3, 133 A.3d 934 (2016) (declining to review request for sanctions when not raised in motion for sanctions); *Hernandez* v. *Dawson*, 109 Conn. App. 639, 644, 953 A.2d 664 (2008) (same).

---